**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: BELVIQ (Lorcaserin) PRODUCTS LIABILTY LITIGATION | MDL Case No.: 3005<br>6:21-cv-00615 (MDFL) |

---

**PLAINTIFF'S INTERESTED PARTY RESPONSE TO**
**MOTION TO TRANSFER ACTIONS TO THE EASTERN DISTRICT OF LOUISIANA**
**PURSUANT TO JPML RULE 6.2(e) AND 28 U.S.C. § 1407**

**ORAL ARGUMENT REQUESTED**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiff JAZMIN MARTINEZ (referred to as "Plaintiff" or "Movant"), by and through her undersigned counsel, respectfully submit this Interested Party Response. For the reasons stated below, Plaintiff joins with the arguments presented by Movants Stephanie Fuller, Robert Fuller, Deborah Steinman, Reuben Steinman, Mildred Smith, Pamela Puskas, Michael Puskas, Jennifer Reynolds-Sitzer, Kenneth Sitzer, Deborah Crawford, Bradly Trey Crawford, Maryann Kaylor and Willard Kaylor, Jr. and agree that consolidation is proper.[1] However, Plaintiff respectfully requests that the Panel consolidate and transfer all federal cases involving Belviq® (hereinafter "Belviq") to the United States District Court for the Middle District of Florida for consolidated proceedings. Furthermore, Plaintiff proffers that the Honorable Paul G. Byron is well-capable and suited to preside over consolidated pretrial proceedings. In the alternative, Plaintiff requests transfer to the Eastern District of Louisiana.[2]

---

[1] Motion to Transfer Actions to the Eastern District of Louisiana, Case MDL No. 3005 [Doc. 2].
[2] Movant Jazmin Martinez seeks, in the alternative, transfer to the Eastern District of Louisiana. As such, she incorporates by reference here the arguments contained in Plaintiffs' Motion to Transfer Actions to the Eastern District of Louisiana, Case MDL No. 3005 [Doc. 2]. Thus,

### I.     Transfer and Consolidation is Appropriate.

At the time of this filing, at least thirteen (13) different cases have been filed across twelve (12) different districts/divisions all asserting nearly identical claims arising from Defendants' defective design and inadequate instructions and warnings of the drug Belviq.[3] Transfer and consolidation is appropriate and necessary because all of the lawsuits involve identical questions of law and fact that arise from the same course of conduct. All of the Plaintiffs allege identical or similar product liability claims which plead identical and/or virtually identical causes of action based on identical theories of recovery.  All of the claims seek damages based on allegations arising from the exact same misconduct; i.e., allegations of the Defendants' intentional, reckless and/or negligent conduct related to the design, testing, manufacturing, marketing, advertising, promoting, labeling, selling and/or distribution of Belviq.

Thus, coordination is proper, necessary and in accordance with the purpose of 28 U.S.C. § 1407. Transfer and coordination serves the best interests of the parties. Economically, coordination conserves resources (e.g., time, money, etc.) of the judiciary, parties and counsel. Equitably, coordination helps ensure the claims are treated fairly instead of risking disparate rulings from different courts that result in additional litigation and, ultimately, incongruent results. Without the benefit of coordination and consolidation, the parties and judiciary will be forced to needlessly spend time, money and resources because many common issues (e.g., matters related to discovery of common issues and generic experts) will be replicated.

### II.     The Middle District of Florida is a Proper Venue for Transfer and Consolidation.

Plaintiff respectfully requests that the cases be transferred and consolidated in the Middle

---

Plaintiff limits her arguments contained herein to the transfer and consolidation in the Middle District of Florida, before Judge Byron.

[3] Motion to Transfer Actions to the Eastern District of Louisiana, Case MDL No. 3005 [Doc. 2] at 1.

District of Florida before Judge Paul Byron. Of the thirteen (13) separate actions currently on file, four (4) cases are already pending in the Middle District of Florida, two in the Orlando division and the other two in the Tampa and Ocala divisions.[4]  Action by this Panel to transfer, consolidate, and coordinate these actions in the United States District Court for the Middle District of Florida before Judge Byron will promote their just and efficient prosecution, enhance judicial economy, and serve the convenience of the parties.

In selecting the appropriate forum, the Panel considers whether a district already has numerous pending MDLs and will be overtaxed by the addition of a new litigation. *See In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378 (J.P.M.L. 2003). Upon information and belief, the Middle District of Florida currently has no pending MDLs. The Panel has stated that if a particular court has no MDLs that is a clear factor weighing in favor of transfer to that under-utilized district. See e.g., *In re Pilgrim's Pride Fair Labor Standards Litig.*, 489 F. Supp. 2d 1381, 1381 (J.P.M.L. 2007); *In re Teflon Prods Liab. Litig.*, 416 F. Supp. 2d 1364, 1365 (J.P.M.L. 2006); *In re FedEx Ground Package System, Inc., Emp. Practices Litig.* (No. II), 381 F. Supp. 2d 1380, 1382 (J.P.M.L. 2005); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 293 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 290 F. Supp. 2d 1374, 1376 (J.P.M.L. 2003).

### A.  Transfer and centralization in the Middle District of Florida is proper because it is convenient to parties and witnesses.

Transferring cases involving one or more common questions of fact to a single district "promote[s] the just and efficient conduct of such actions." 28 U.S.C. § 1407. Moreover,

---

[4] *Id.* at 2; *Id.* at FN 2.  The Middle District of Florida cases include: *Martinez v. Eisai, Inc. et al.*, 6:21-cv-00615 (Orlando Division); *Batayeh v. Eisai, Inc. et al.*, 6:21-cv-00406 (Orlando Division); *Scala v. Eisai, Inc. et al.*, 5:21-cv-00210 (Ocala Division); and *Milana et al. v. Eisai, Inc. et al.*, 8:21-cv-00831 (Tampa Division).

transferring this case to the Middle District of Florida will be exceptionally convenient for the parties.  The Middle District of Florida, Orlando Division has a population of approximately of over 2 million in the metro area. The Orlando International Airport is served by 44 different airlines with direct flights and connections throughout the United States. The district has more than adequate hotel accommodations.

Undoubtedly, the Middle District of Florida is a convenient and even an ideal venue for consolidated nationwide litigation.  "[T]ransfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Convenience of parties and witnesses includes consideration of the location of parties and witnesses and the accessibility to the transferee jurisdiction to counsel from multiple jurisdictions. See, e.g., *In re High Pressure Laminate Antitrust Litig*, 2000 US Dist. LEXIS 14849; *In re Polyester Staple Antitrust Litig*, 259 F Supp. 2d. at 1380; *In re Pressure Sensitive Labelstock Antitrust Litig*, 290 F. Supp 2d. at 1376; *In re High Pressure Laminate Antitrust Litig*, 2000 US Dist. LEXIS 14849; See also, Gregory Hansel, Extreme Litigation: An Interview with Judge Wm. Terrell Hodges, Chairman of the Judicial Panel on Multidistrict Litigation, 19 Me. Bar J. 16, 19 (2004) ("[W]e take into account ... the accessibility of the court, particularly air travel in selecting a transferee district.").

**B. Honorable Paul G. Byron is exceptional qualified and experienced to handle this MDL.**

The Honorable Paul G. Byron is a highly qualified judge who is remarkably well suited to hear this litigation. Judge Byron began his legal career as a Judge Advocate in the Judge Advocate General's Corps of the United States Army from 1986 to 1990.  From 1991, he served as an Assisted United States Attorney in the Middle District of Florida.  From 2001 to 2003,

4

Judge Byron served as a Senior Trial Attorney on the International Criminal Tribunal for the former Yugoslavia.  From 2004 to 2005, Judge Byron worked in the Asset Forfeiture Section of the United States Department of Justice.[5] Judge Byron has served the United States District Court for the Middle District of Florida since 2014, after being appointed by President Obama and unanimously confirmed by the Senate. Judge Byron has a wide range of experience, including 213 complex class action matters.[6]  Throughout his judicial career, Judge Byron has managed more than 4,600 cases, demonstrating his unique ability to efficiently administer his docket.

## III.    CONCLUSION

For the reasons set forth fully herein, Plaintiff respectfully requests that this Panel transfer all actions on the original Schedule of Actions, all noticed Related Actions, and all subsequently filed tag-along cases to the Middle District of Florida for pre-trial centralization before Judge Brian R. Byron.

**Dated**: May 5, 2021                                   Respectfully submitted:

                                         _/s/Daniel J. Thornburgh_____
                                         Daniel J. Thornburgh (FL Bar No. _____)
                                         AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
                                         17 East Main Street, Suite 200
                                         Pensacola, FL  32502
                                         Tel:  (850) 202-1010
                                         Email:   dthornburgh@awkolaw.com
                                         *Attorneys for Plaintiff Jazmin Martinez*

---

[5]  https://obamawhitehouse.archives.gov/the-press-office/2014/02/05/president-obama-announces-intent-nominate-four-serve-united-states-distr;
https://www.fjc.gov/history/judges/byron-paul-gregory.

[6] Ex. A, Westlaw – Litigation Analytics Report for Hon. Paul Byron